1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THERESA M. CERVANTES,               )   Case No. EDCV 09-70 JC
                                    )
                Plaintiff,          )
                                    )   MEMORANDUM OPINION
        v.                          )
                                    )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security,                           )
                                    )
                Defendant.          )
_____    )

## I.    SUMMARY

        On January 16, 2009, plaintiff Theresa M. Cervantes ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

        This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; January 22, 2009 Case Management Order ¶ 5.
///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On or about March 10, 2005, plaintiff filed an application for Disability

7    Insurance Benefits.  (Administrative Record ("AR") 17, 70-74).  Plaintiff asserted

8    that she became disabled on November 20, 2002, due to lower back injury that

9    resulted in back surgery.  (AR 83).  The ALJ examined the medical record and

10   heard testimony from plaintiff (who was represented by counsel) and a vocational

11   expert on March 27, 2007.  (AR 589-618).

12   On June 29, 2007, the ALJ issued the decision in issue.  (AR 17-33).  The

13   ALJ determined that at all relevant times, plaintiff suffered from the following

14   severe impairments:  status post lumbar fusion, diabetes mellitus and obesity (AR

15   28).  The ALJ made disability determinations with respect to three distinct periods

16   of time:  (1) for the period November 20, 2002 through September 15, 2004

17   ("Period I"), the ALJ determined that plaintiff was disabled; (2) for the period of

18   September 16, 2004 through April 24, 2006 ("Period II"), the ALJ determined that

19   plaintiff was not disabled and could perform a limited range of light work[2]; (3) for

20

21   ─────────────────

22   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196

23   (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
     Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of

24   application of harmless error standard in social security cases).

25   [2]Under the pertinent Social Security Regulation, "light work" is defined to involve lifting
     no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

26   pounds.  20 C.F.R. § 404.1567.  Even though the weight lifted may be very little, a job is in this
     category when it requires a good deal of walking or standing, or when it involves sitting most of

27   the time with some pushing and pulling of arm or leg controls.  Id.  To be considered capable of

28                                                                    (continued...)

1  the period of April 25, 2006 through the date of the decision ("Period III), plaintiff
2  was not disabled and could perform the full range of light work.  (AR 17, 29, 30,
3  32-33).  The ALJ's determinations with respect to Period II and Period III are in
4  issue.

5        The Appeals Council denied plaintiff's application for review on November
6  25, 2008.  (AR 5-8).

7  **III.  APPLICABLE LEGAL STANDARDS**

8        **A.   Sequential Evaluation Process**

9        To qualify for disability benefits, a claimant must show that she is unable to
10 engage in any substantial gainful activity by reason of a medically determinable
11 physical or mental impairment which can be expected to result in death or which
12 has lasted or can be expected to last for a continuous period of at least twelve
13 months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
14 § 423(d)(1)(A)).  The impairment must render the claimant incapable of
15 performing the work she previously performed and incapable of performing any
16 other substantial gainful employment that exists in the national economy.  Tackett
17 v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18       In assessing whether a claimant is disabled, an ALJ is to follow a five-step
19 sequential evaluation process:

20       (1)   Is the claimant presently engaged in substantial gainful activity?  If
21            so, the claimant is not disabled.  If not, proceed to step two.

22       (2)   Is the claimant's alleged impairment sufficiently severe to limit
23            her ability to work?  If not, the claimant is not disabled.  If so,
24            proceed to step three.

25
26       [2](...continued)
27 performing a full or wide range of light work, one must have the ability to do substantially all of
   the foregoing activities.  Id.  Here, for Period II, the ALJ determined that plaintiff could (i) lift
28 and carry 10 pounds frequently and 20 pounds occasionally; (ii) stand/walk four hours in an
   eight-hour workday; (iii) sit four hours in an eight-hour workday; and (iv) occasionally climb,
   balance, stoop, kneel, crouch and crawl.  (AR 30).

(3)   Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant is
disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to
perform her past relevant work?  If so, the claimant is not
disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow her to adjust to other work that exists in
significant numbers in the national economy?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

4

1   To determine whether substantial evidence supports a finding, a court must

2   "'consider the record as a whole, weighing both evidence that supports and

3   evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>

4   <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

5   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

6   or reversing the ALJ's conclusion, a court may not substitute its judgment for that

7   of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

8   **C.   Assessment of Medical Opinions**

9   In Social Security cases, courts employ a hierarchy of deference to medical

10  opinions depending on the nature of the services provided.  Courts distinguish

11  among the opinions of three types of physicians:  those who treat the claimant

12  ("treating physicians") and two categories of "nontreating physicians," namely

13  those who examine but do not treat the claimant ("examining physicians") and

14  those who neither examine nor treat the claimant ("nonexamining physicians").

15  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995), <u>as amended</u> (9th Cir. 1996)

16  (footnote reference omitted).  A treating physician's opinion is entitled to more

17  weight than an examining physician's opinion, and an examining physician's

18  opinion is entitled to more weight than a nonexamining physician's opinion.[3]  <u>See</u>

19  <u>id.</u>  In general, the opinion of a treating physician is entitled to greater weight than

20  that of a non-treating physician because the treating physician "is employed to

21  cure and has a greater opportunity to know and observe the patient as an

22  individual." <u>Morgan v. Commissioner of Social Security Administration</u>, 169

23  F.3d 595, 600 (9th Cir. 1999) (citing <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th

24  Cir. 1987)).

25  ///

26

27

28  [3]<u>Cf.</u> <u>Le v. Astrue</u>, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1    The treating physician's opinion is not, however, necessarily conclusive as
2    to either a physical condition or the ultimate issue of disability. Magallanes v.
3    Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
4    759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not
5    contradicted by another doctor, it may be rejected only for clear and convincing
6    reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal
7    quotations omitted). The ALJ can reject the opinion of a treating physician in
8    favor of a conflicting opinion of another examining physician if the ALJ makes
9    findings setting forth specific, legitimate reasons for doing so that are based on
10   substantial evidence in the record. Id. (citation and internal quotations omitted);
11   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by
12   setting out detailed and thorough summary of facts and conflicting clinical
13   evidence, stating his interpretation thereof, and making findings) (citations and
14   quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite
15   "magic words" to reject a treating physician opinion – court may draw specific and
16   legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his
17   conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must
18   set forth his own interpretations and explain why they, rather than the
19   [physician's], are correct." Id. "Broad and vague" reasons for rejecting the
20   treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,
21   602 (9th Cir. 1989).

22   **D.    Assessment of Workers' Compensation Evidence**

23   The terms of art used in California workers' compensation claims are not
24   equivalent to those used in Social Security disability cases. See Booth v.
25   Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002) (citing Macri v. Chater, 93
26   F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human
27   ///
28   ///

6

1  Services, 846 F.2d 573, 576 (9th Cir. 1988)).[4]  Nonetheless, an ALJ may not
2  ignore a medical opinion merely because it was issued in a workers' compensation
3  context.  Booth, 181 F. Supp. 2d at 1106.  Instead, the ALJ must evaluate the
4  objective medical findings in such opinions in the same manner as with any other
5  medical opinion evidence.  Id.  The ALJ's decision should reflect, however, that
6  the ALJ properly considered the pertinent distinctions between the two schemes:

7       While the ALJ's decision need not contain an explicit "translation," it
8       should at least indicate that the ALJ recognized the differences
9       between the relevant state workers' compensation terminology, on the
10      one hand, and the relevant Social Security disability terminology, on
11      the other hand, and took those differences into account in evaluating
12      the medical evidence.

13  Booth, 181 F. Supp. 2d at 1106; see, e.g., Desrosiers, 846 F.2d at 576 (finding ALJ
14  interpretation of treating physician's opinion erroneous where record clear that
15  ALJ affirmatively failed to consider distinction between categories of work under
16  social security disability scheme versus workers' compensation scheme).

17

18  ───────────────
19       [4]As observed by the Ninth Circuit:

20          Under the California workers' compensation guidelines, a claimant
            incapable of performing "heavy" work may be capable of
21          performing "light," "semi-sedentary," or "sedentary" work.  None of
            these three categories, however, is based on strength.  Rather, they
22          turn on whether a claimant sits, stands, or walks for most of the day.
            Each entails a "minimum of demands for physical effort." [citation
23          omitted]
24
25          The categories of work under the Social Security disability scheme
            are measured quite differently.  They are differentiated primarily by
26          step increases in lifting capacities.
27
28       Desrosiers, 846 F.2d at 576 (internal citation omitted); see also Glass v. Workers'
         Compensation Appeals Board, 105 Cal. App. 3d 297, 302 (1980) n.1 (quoting and
         discussing the "Schedule for Rating Permanent Disabilities Under Provisions of the Labor
         Code of the State of California").

## IV.   PERTINENT FACTS

### A.   Medical Evidence

On July 24, 2003, plaintiff had surgery on her lower back in connection with a state workers' compensation claim. (AR 18-19, 154-57, 190-93).

On September 16, 2004, Dr. George H. Lobley reviewed plaintiff's medical records and x-rays of plaintiff's lumbosacral spine and conducted an Orthopedic Agreed Medical Examination ("AME") of plaintiff in connection with plaintiff's workers' compensation claim. (AR 246-59). Dr. Lobley's September 16, 2004 AME report reflects that plaintiff: (i) had lower back surgery in July 2003; (ii) continued to complain of lower back pain on motion in any direction, mainly on extension and rotation bilaterally more so to her left; (iii) had no atrophy of any major muscle groups; (iv) had slight to moderate tenderness in the mid-lumbar area, lower lumbar area, lumbosacral junction area, upper sacral area, and sacroiliac areas, with no muscle spasm, and findings more pronounced on plaintiff's left side; (v) had decreased range of motion in her lumbar spine; and (vi) had good range of motion in both lower extremities, with some guarding when lifting her legs, more with her left leg. (AR 250-52).

Dr. Lobley identified the following objective factors of disability relative to plaintiff's lower back: (1) clinical tenderness in the low back area; (2) loss of low back motion approximating 15 to 20%; and (3) status post low back surgery. With respective to subjective factors of disability, Dr. Lobley stated:

> Subjectively relative to her low back, [plaintiff] has intermittent slight pain which increases to moderate and sometimes severe pain with certain activities. She has difficulty with strenuous activity. She can have difficulty with any lengthy activity. She has difficulty with a lot of standing and walking activity. She can have difficulty at times with a lot of sitting activity.

///

8

1    (AR 252-53).  Dr. Lobley recommended the following work restrictions on a

2    prophylactic basis:  "[Plaintiff] is limited to semi-sedentary work.  She can do

3    work approximately one half the time in a sitting position, and approximately one

4    half the time in a standing and walking position with a minimum of demands for

5    physical effort whether standing, walking, or sitting."  (AR 253).  Dr. Lobley

6    opined that, if plaintiff decided not to proceed with further low back surgery,

7    plaintiff's disability would remain permanent and stationary.  (AR 252, 254).

8         On November 8, 2004, Dr. Ralph N. Steiger, plaintiff's workers'

9    compensation treating physician from July 2004 to November 2004, conducted an

10   orthopedic examination and reevaluation of plaintiff.  (AR 260-65, 269).  In the

11   November 8, 2004 report, Dr. Steiger's identified the following objective factors

12   of disability: (i) CT scan findings revealing pedicle screws at the S1 level, metallic

13   cage at the interspace between L5-S1, and disc protrusions at L3-4 and L4-5;

14   (ii) reduced lumbar spine range of motion; (iii) bilateral tenderness of the

15   posterior-superior iliac spine; (iv) a large surgical scar over the lumbar spine;

16   (v) reduced straight leg raising in both the sitting and supine positions with

17   bilaterally positive signs of sciatic nerve root irritability; and (vi) hypesthesia upon

18   palpatation of the left leg and foot.  (AR 263-64).  With respective to subjective

19   factors of disability, Dr. Steiger identified:

20            Constant slight to moderate low back pain with radiation to the left

21            hip and numbness and tingling in the left lower extremity becoming

22            moderate to severe with pushing, pulling, lifting and twisting, and

23            with prolonged standing and walking.

24   (AR 263).  Dr. Steiger found plaintiff's disability permanent and stationary, and

25   noted that plaintiff "has a disability resulting in limitation to light work with

26   constant slight to moderate pain.  Also, no repetitive twisting, no prolonged

27   sitting, no prolonged standing, or walking."  (AR 264).

28   ///

1    Dr. Thomas Haider, an orthopedic surgeon, treated plaintiff from February
2  23, 2005, to December 26, 2006 in connection with her workers' compensation
3  claim.  (AR 472-91, 517-58, 564-65, 567-69, 571-72).  When Dr. Haider initially
4  examined plaintiff on February 23, 2005, he recommended that the EBI bone
5  stimulator battery and surgical hardware implanted during plaintiff's 2003 back
6  surgery be removed.  (AR 490).  On May 5, 2005, Dr. Haider performed such
7  surgery.  (AR 478, 481-82).
8    On June 13, 2005, Dr. Jeff Altman, a state agency physician, conducted a
9  consultative orthopaedic examination of plaintiff.  (AR 454-58).  After examining
10  plaintiff and reviewing the medical records (which included records from Dr.
11  Lobley), Dr. Altman assessed the following functional limitations:  plaintiff could
12  push, pull, lift or carry 20 pounds occasionally and 10 pounds frequently; could
13  stand and/or walk for four hours in an eight-hour workday; could sit for six hours
14  in an eight-hour day; and could occasionally bend, kneel, stoop, crawl, crouch,
15  walk on uneven terrain, climb ladders, and work on heights.  (AR 457).
16    On June 23, 2005, Dr. Thu N. Do, another state agency physician,
17  completed a Physical Residual Functional Capacity Assessment form.  (AR 460-
18  71).  After reviewing plaintiff's medical records, including the report of Dr.
19  Lobley's September 16, 2004 examination and the report of Dr. Altman's June 13,
20  2005 consultative examination, Dr. Do assessed the following limitations:
21  plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently;
22  could stand and/or walk for four hours in an eight-hour workday; could sit for six
23  hours in an eight-hour workday; could occasionally climb ramps and stairs,
24  ladders, ropes, or scaffolds; and could occasionally balance, stoop, kneel, crouch,
25  and crawl.  (AR 461-62).  Dr. Do indicated that plaintiff's medical records
26  contained no treating or examining opinions that were significantly different.  (AR
27  466).  On December 29, 2005, another state agency physician concurred with Dr.
28  Do's  residual functional capacity assessment.  (AR 498-99).

On April 25, 2006, Dr. Haider examined plaintiff and prepared an updated workers' compensation report which noted that plaintiff's medical condition was permanent and stationary. (AR 551). Dr. Haider identified objective factors of disability which included guarding and decreased range of motion lower back and decreased sensation L4 and L5 nerve distribution left lower extremity. (AR 551). Dr. Haider specified "[s]light to moderate constant pain in [plaintiff's] lower back and right leg, which intermittently becomes moderate with lifting, bending and stooping" as a subjective factor of disability. (AR 551). Dr. Haider restricted plaintiff to light work. (AR 551).

**B.     ALJ's Decision**

In the June 29, 2007, decision, the ALJ thoroughly discussed the medical opinions and evaluations regarding plaintiff's physical impairments provided by a number of treating, examining and reviewing physicians, as well as the testimony of plaintiff and the vocational expert at the administrative hearing. (AR 18-28). The ALJ discussed in particular detail the objective medical findings reflected in Dr. Haider's treatment records for plaintiff, in pertinent part, as follows:

> [Dr. Haider] provided a consult/second opinion for Workers'
> Compensation in February 2005. He noted that the [plaintiff] was
> permanent and stationary for semi-sedentary work according to [Dr.
> Lobley] as of September 2004. He opined that [plaintiff] did not need
> further back surgery . . . However, [Dr. Haider] did advise that
> [plaintiff] should have removal of the surgical hardware and removal
> of bone stimulator (Exhibit 12-F:14 [AR 485, 490]). That surgery
> was performed in May 2005 (Id. at 7 [AR 478]). By August 2005,
> [plaintiff] was reported as walking normally (Id. at 5 [AR 476-77]).
> The September 2005 physical examination found no use of a cane, no
> atrophy and negative straight leg raising, but that the [plaintiff] has
> physical deconditioning and thus "TTD" for Workers' Compensation

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

purposes (Id. at 2 [AR 473-74]).  In November 2005, Dr. Haider found the [plaintiff] disabled for 6 weeks for physical therapy. (Exhibit 16-F:52 [AR 567-68]).

By the time of his December 2005 examination, Dr. Haider noted that the [plaintiff] had no problems walking, no pain and no need for a supportive device with the ability to get on and off the examination table with no difficulty.  He reported subjective tenderness in the lumbar spine, decreased range of motion with guarding, no radiation of the back pain, no gluteal atrophy, no swelling, muscle spasms, negative straight leg raising, negative provocative testing, normal circulation in the bilateral lower extremities, a non-antalgic gait and normal muscle strength in the bilateral lower extremities.  Dr. Haider recommended that [plaintiff] work on flexibility in physical therapy and anticipated that the [plaintiff] should be at maximum medical improvement in 4 weeks (Exhibit 16-F:56 [AR 571-72]).  The January 2006 and March 2006 physical examinations showed no change.  (Id. at 26 and 30 [AR 541-42; 545-46]).  Dr. Haider found [plaintiff] permanent and stationary as of April 25, 2006 with a normal dorsal spine, lumbar spine subjective tenderness and decreased range of motion with guarding, a healed surgical scar, muscle spasms, negative straight leg raising, normal deep tendon reflexes, normal muscle strength in the bilateral lower extremities and normal sensation except for a subjective decrease on the left.  The doctor found the [plaintiff] restricted to light work (Id. at 34 [AR 549-51]).  [Plaintiff] was found to remain at permanent and stationary status when re-evaluated in July 2006, September 2006 and December 2006 (Id. at 2, 18 and 23 [AR 517-18, 533-34, 538-39]).

1   (AR 20).

2          The ALJ also summarized the pertinent medical evidence as follows:

3                 [T]he evidence shows that the [plaintiff] had back surgery in

4          July 2003, and the Agreed Medical Examiner, Dr. Lobley, found that

5          as of September 14, 2004, [plaintiff's] condition improved and she

6          was permanent and stationary for semi-sedentary work.  A treating

7          Workers' Compensation physician, Dr. Steiger, gave his opinion in

8          November 2004 that the [plaintiff] was permanent and stationary for

9          light work with no "repetitive twisting, no prolonged sitting, no

10         prolonged standing and walking."  The Disability Determination

11         Service consultants found in June 2005 and December 2005 that the

12         [plaintiff] could do light exertion with 4 hours standing and walking

13         in an eight-hour workday with occasional postural limitations.  Dr.

14         Haider, the Workers' Compensation doctor, removed [plaintiff's]

15         surgical hardware and spinal stimulator in May 2005 and opined that,

16         by April 2006, [plaintiff] was permanent and stationary and that she

17         had regained the ability for light work.  Thus, Dr. Haider found that

18         within 12 months of the May 2005 surgery, the [plaintiff] regained

19         the ability for light work, that is, she was then capable of an even

20         greater work capacity than she had when found permanent and

21         stationary by [Dr. Lobley] in September 2004.

22  (AR 22).  In light of this analysis, the ALJ provided the following detailed

23  findings regarding plaintiff's residual functional capacity:

24                For the period starting September 16, 2004, I give the greatest

25         weight to the assessment from [Dr. Lobley].  [Dr. Lobley] is the

26         doctor who was selected by the attorneys to the contested Workers'

27         Compensation claim to give the definitive residual functional

28         capacity assessment for the Workers' Compensation claim.  I find that

13

1    the assessment of Dr. Steiger, an advocate doctor for the [plaintiff],
2    gave a residual functional capacity assessment in November 2004 that
3    was generally consistent with that from the [Agreed Medical
4    Examiner], Dr. Lobley.  The Disability Determination Service
5    consultants also provided residual functional capacity assessments
6    that were consistent with that from [Dr. Lobley].  Accordingly, I find
7    that, as of September 16, 2004, the [plaintiff] had medical
8    improvement in her medical conditions.  Due to that medical
9    improvement, she regained the ability to [] perform a limited range of
10   light work, that is, lift and carry 10 pounds frequently and 20 pounds
11   occasionally, stand/walk 4 hours and sit 4 hours in an eight-hour
12   workday and capable of climbing, balancing, stooping, kneeling,
13   crouching and crawling occasionally.

14           I further find, based on the opinion of Dr. Haider, an advocate
15   doctor for the [plaintiff], that the [plaintiff] had even greater
16   improvement in her medical condition after the May 2005 surgery to
17   remove the surgical hardware and stimulator, that is, she regained the
18   ability for a full range of light work as of April 25, 2006 (Exhibit
19   16F:34 [AR 549-52]).

20   (AR 22).

21   **V.    DISCUSSION**

22           Plaintiff contends that the ALJ failed adequately to consider the opinions
23   expressed in the April 25, 2006 workers' compensation report of Dr. Haider, one
24   of plaintiff's treating physician.  More specifically, plaintiff argues that the ALJ
25   improperly ignored and implicitly rejected a portion of the report which contains
26   Dr. Haider's subjective disability assessment (that plaintiff suffered slight to
27   moderate constant pain, which intermittently became moderate with lifting,
28   bending or stooping) without stating any reason therefor.  Plaintiff suggests that

1  this failure is material because such assessment, if properly interpreted in
2  accordance with the applicable Workers' Compensation regulation – something
3  which plaintiff contends the ALJ failed to do – calls into question whether
4  plaintiff could perform any work on a sustained basis. (Plaintiff's Motion at 6).
5  This Court finds no material error in the ALJ's assessment of Dr. Haider's
6  opinions.

7        First, the Court rejects plaintiff's assertion that the ALJ failed to consider
8  the differences between the workers' compensation and social security statutory
9  schemes. Evidence that the ALJ was well aware of the relevant statutory
10  distinctions can be seen throughout the ALJ's decision. The ALJ expressly
11  acknowledged that "disability" was a distinct concept for Workers' Compensation
12  and "Social Security benefits" purposes. (AR 23). The ALJ recognized that Dr.
13  Haider treated plaintiff "for Workers' Compensation [purposes]." (AR 20). The
14  ALJ also distinguished between "Workers' Compensation doctors" and other
15  treating/consultative physicians in her decision. (AR 19, 20, 22, 23). This Court
16  is satisfied that the ALJ recognized the differences between the relevant state
17  workers' compensation terminology, on the one hand, and the relevant Social
18  Security disability terminology, on the other hand, and took those differences into
19  account in evaluating the medical evidence.

20        Second, the Court finds no material error in the ALJ's failure specifically to
21  address and expressly to reject Dr. Haider's assessment of plaintiff's subjective
22  complaints in light of the thoroughness of the ALJ's description of the medical
23  evidence and the ALJ's interpretation thereof coupled with the ALJ's detailed
24  discussion and finding that plaintiff's subjective complaints regarding her pain
25  were not entirely credible – a finding which plaintiff has not challenged. See
26  Thomas, 278 F.3d at 957 (ALJ can meet burden of rejecting a treating physician's
27  opinion by setting out detailed and thorough summary of facts and conflicting
28  clinical evidence, stating his interpretation thereof, and making findings) (citations

1   and quotations omitted); <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ

2   properly disregarded treating physician's opinion that was premised on plaintiff's

3   own subjective complaints which the ALJ had already properly discounted);

4   <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751, 755 (9th Cir. 1989) (same; ALJ need

5   not recite "magic words" to reject a treating physician opinion – court may draw

6   specific and legitimate inferences from ALJ's opinion).  Indeed, the ALJ expressly

7   noted that plaintiff's physicians – including her advocate and agreed medical

8   examiner workers' compensation physicians (*i.e.*, Drs. Haider, Steiger and Lobley)

9   – considered plaintiff's subjective complaints, and that if plaintiff was as disabled

10  as she claimed by her pains, her doctors would have ordered more aggressive

11  treatment and would not have found that she reached a permanent and stationary

12  status for her workers' compensation claim.  (AR 31).  It is thus reasonable to infer

13  from the ALJ's thorough and detailed analysis, that the ALJ discounted the portion

14  of Dr. Haider's opinions which were based on plaintiff's subjective complaints

15  (*i.e.*, that she experienced/would experience certain degrees of pain when lifting,

16  bending, or stooping) because the ALJ did not find plaintiff to be credible.  (AR

17  24-26, 31-32) (finding plaintiff not credible because complaints/limitations not

18  supported by objective findings and observed functional restrictions, not

19  consistent with treatment, and not consistent with plaintiff's daily activities, and

20  because plaintiff gave inconsistent testimony).

21      In short, this Court finds no material error in the ALJ's assessment of Dr.

22  Haider's opinions.[5]

23

24

25      [5]Plaintiff also suggests that the ALJ's alleged error relative to her assessment of Dr. Haider's April 25, 2006 report – a report upon which the ALJ relied in making her Period III residual functional capacity assessment – somehow undermines the ALJ's assessments regarding Period II.  (Plaintiff's Motion at 6) (arguing that asserted error taints entire disability evaluation for Period II and Period III).  Plaintiff's reasoning is not entirely clear to the Court and is rejected because, as noted above, the Court finds no material error in the ALJ's assessment of Dr. Haider's opinions.  However, even if the ALJ had erred with respect to her assessment of Dr.

26

27

28

(continued...)

1   **VI.    CONCLUSION**

2        For the foregoing reasons, the decision of the Commissioner of Social

3   Security is affirmed.

4        LET JUDGMENT BE ENTERED ACCORDINGLY.

5   DATED:  February 26, 2010

6                                    _____/s/_____

7                                    Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   _____

25        [5](...continued)

26   Haider's April 25, 2006 report, such error would impact only the Period III residual functional
     capacity assessment and, in any event, would be harmless because whether plaintiff had the
27   ability to perform a full range of light work (as assessed by the ALJ for Period III) or only the
     ability to perform a limited range of light work (as assessed by the ALJ for Period II, irrespective
28   of the April 25, 2006 report), the ALJ properly concluded that she could still perform her past
     relevant work.

17